## Case No. 2,940.

### CODY v. CENTRAL PAC. R. CO.

[4 Sawy. 114; 15 Alb. Law J. 52.][1]

Circuit Court, D. Nevada. Nov. 9, 1876.

RAILROAD—THROUGH TICKET—CONTINUOUS EMIGRANT PASSAGE.

1. M. purchased a through emigrant ticket from Baltimore to San Francisco, at reduced rates, over the Union and Central Pacific Railroads as a part of the route. The contract, containing certain limitations, one of which is, that it was not transferable, was signed by M. At Omaha the contract was taken up and an exchange check issued to M., which purported upon its face to call for "one continuous emigrant passage" from Omaha to San Francisco. M. traveled on the check to Palisade, in the state of Nevada, and sold it to C., who attempted to ride on the ticket upon the same train; *Held*, that he was not entitled to ride on that check.

2. A contract for "one continuous emigrant passage from Omaha to San Francisco," is not a contract to carry one person from Omaha to

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 15 Alb. Law J. 52, contains only a partial report.]

an intermediate station, and a second to another station, and so on, but only a contract to carry the same person through the entire route.

Action at law to recover damages from the defendant [the Central Pacific Railroad Company] for ejecting the plaintiff [H. A. Cody] from its cars, upon the following state of facts:

August 10, 1875, the Baltimore and Ohio Railroad Company issued, from its office in the city of Baltimore, to one Michel Meur, a ticket or contract for a passage to San Francisco, Cal., in the words and figures following:

"Issued by the Baltimore and Ohio Railroad Company. Acting for itself on its own road and as agent only of the other companies owning portions of the route respectively. Good for one emigrant passage to San Francisco, Cal., only, on presentation of this ticket with checks attached. Not good unless dated and bearing official stamp of office at the point sold. Not transferable. Good only in forward car. Responsibility for the safety of person or loss of baggage on each portion of the route is confined to the proprietors of that portion alone.

"Contract.—In consideration of the reduced rate at which this ticket is sold, it will be forfeited if not presented to the Union Pacific Railroad Company, for passage, within ten days from date of sale, officially stamped on the back, with the same date in writing on the face, and signed by the purchaser. No stop-over check to be issued on this ticket, and the coupons hereto will not be received for passage if detached from the contract. This ticket is to be exchanged by the Union Pacific Railroad Company, at Omaha, for one limited to nine days from date of issue, on which baggage will be checked to destination only. I hereby agree that the purchase of this ticket with the coupons attached is made subject to each and all of the above conditions.

"Dated August 10, 1875.

"(Signed)                    Michel Meur."

Upon his arrival at Omaha the Union Pacific Railroad Company gave to Meur, in exchange for the ticket set forth above, another ticket, known as the Union Pacific Railroad emigrant exchange check, which, omitting the names of stations and marginal figures and letters not material here, is in the following words:

"Union and Central Pacific Railroad Line.
"Thos. L. Kimball,
"3442.        Gen'l Ticket Agent U. P. R. R.

"One continuous emigrant passage from Omaha to station canceled. Good for nine days from date indicated in the margin, after which time it will be void. No stop-over check given on this ticket. Baggage checked only to destination. Whole, 1875. Half."

With this ticket Meur traveled to Palisade, a station on defendant's road, and there sold it to the plaintiff, Cody. Cody then took the same train which Meur had

just left, and in turn traveled to Battle Mountain, fifty miles west of Palisade. The conductor refused to recognize the ticket purchased by Cody as entitling him to a passage, and demanded fare of him, which he refused to pay. Thereupon he was ejected from the cars, at Battle Mountain, without any unnecessary force or severity. It further appeared, from the evidence, that the rate of fare per mile for a through third-class or emigrant passage is much less than the rate on the same train from intermediate stations to San Francisco, or from one intermediate station to another; that one inducement for issuing these third-class tickets and running an emigrant train is the local travel paid for at the increased local rates; that, except this through emigrant train, there is no emigrant train run on the defendant's road between Ogden and San Francisco, nor are any third-class tickets sold by the defendant. Passengers who get on this through emigrant train at way stations along the defendant's road pay local rates of fare. The case was tried by the court without a jury.

Charles N. Harris, for plaintiff.
T. B. McFarland, for defendant.

Before SAWYER, Circuit Judge, and HILLYER, District Judge.

SAWYER, Circuit Judge. It is clear to our minds that the plaintiff had no right to ride on defendant's road upon the check purchased of Meur at Palisade, and that he was properly excluded from the cars on that ground. Meur made a contract for a through emigrant passage from Baltimore to San Francisco at a reduced rate in consequence of taking a through passage. His contract stated in terms that it was not transferable, and he signed the contract assenting to its conditions. The written contract was surrendered in pursuance of its provisions at Omaha, where Meur received from the Union Pacific Railroad Company the usual check given in such cases, known as the "Union Pacific Railroad Emigrant Exchange Check," which called for "one continuous emigrant passage from Omaha to station canceled," viz.: San Francisco. The contract entered into with Meur was to carry him through the whole distance as an emigrant, and not to carry him to one station, and some one else to another. And it was an express term of the contract that it was "not transferable." It does not affect the question, that the evidence of the original contract was surrendered at Omaha, and the exchange check given not fully expressing the terms of the contract. The check was, doubtless, evidence in Meur's hands that he was entitled to a "continuous emigrant passage" from Omaha to San Francisco. But it did not purport to give the terms of the contract. The fact that through emigrant rates are lower than rates for local travel from station to station is one of general notoriety.

The check had marks and numbers referring to the written contract at first executed, by which the connection of the two could be traced and identified. It was the duty of the purchaser to ascertain before purchasing what his rights under the purchase would be. If he did not understand the numbers and reference, as well as the other matter expressed upon the check, he should have ascertained what they signified. He knew, at all events, that the check only called for a "continuous emigrant passage" from Omaha to San Francisco, and that he was not an emigrant and not a passenger from one of these points to the other. But if the check is considered only as evidence of a right to a passage from Omaha to San Francisco, without regard to the previous contract in pursuance of which it was in fact issued, the result, in our judgment, would be the same. It is still evidence upon its face only of a right to "one continuous emigrant passage" from Omaha to San Francisco. The evidence showed that through rates from Omaha to San Francisco are considerably less than local rates from one station to another; that a railroad company can afford to carry cheaper on long through routes than on short local portions of the route; and that their tariff of fares is based upon this principle. It is evident that this must be the case. A contract, therefore, for one "continuous emigrant passage" from Omaha to San Francisco is not a contract to carry one man from Omaha to the next station, another to the next station, and so on through the entire line, but an entirely different contract, and one upon different terms, and for a different rate of compensation. If this experiment should succeed, parties could readily arrange privately for local travel at through rates without the consent of the companies. A party might as well contract to carry a ton of freight from Omaha to San Francisco, and then insist that he could have a ton carried to the first station, and transfer a right to another party to carry another and different ton of freight to the next station, and so on through the entire line. The inconvenience and loss to the company would doubtless be greater than in the case of a passenger, but the difference is only in degree, not in principle. In the case in hand, then, whether we regard the exchange check issued to Meur as a part of the original contract, or as an independent contract for one "continuous emigrant passage from Omaha to San Francisco," it was not a contract to carry Meur from Omaha to Palisade, and Cody or some one else to some other station on the road. The right to ride upon the road upon this check from Palisade could not be transferred to Cody without defendant's consent. And the fact that the contract was for one through passage appeared on the face of the check itself. Plaintiff, therefore, was not entitled to ride on the check, as the defendant never contracted to carry him on it. As he refused

to pay the usual fare, he was properly ejected from the defendant's cars on that ground. Let judgment be entered for defendant.