[No. 15283.    In Bank.—January 5, 1895.]

# W. H. ROBINSON, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROADS—RIGHT OF PASSENGER TO STOP OVER—CONSTRUCTION OF CODE.—Under section 490 of the Civil Code the purchaser of a railroad ticket is entitled to stop over at any intermediate station between the station at which the ticket was bought and the station of his destination, and may resume his journey within six months after the purchase of the ticket to the point named as his destination.

ID.—CONSTRUCTION OF "AND" AND "OR."—The words "and" and "or" are not ordinarily convertible terms, and the conjunction "and" should not be read disjunctively as equivalent to "or," unless it is entirely manifest from the context that the intention of the law-making power can only be given effect by holding these terms convertible.

ID.—IMPLIED REPEAL OF STATUTE—RATES OF FARE—REFERENCE TO REPEALED SECTION—SUBSTITUTE.—The fact that section 489 of the Civil Code, which is referred to in section 490, as fixing the fare to be tendered for a ticket, was repealed by the provision of section 22 of article XII of the constitution, creating a railroad commission, and authorizing it to fix rates of fare, does not effect an implied repeal of section 490 of the Civil Code, but the constitutional provision operates as a substitute for section 489, and the substance of the provision in section 490 is to require the tender of lawful fare for the purchase of the ticket.

ID.—PURCHASE OF ALTERNATIVE TICKET—CHOICE OF LONGER ROUTE—RIGHT OF STOPOVER.—The purchase of a ticket at the regular rate of fare, which in terms gives the passenger the alternative right to go to Oakland or Alameda at the same regular rate, confers the right upon a passenger, who elects to go over an established route to Alameda by way of Oakland, to stop over in Oakland, and afterward resume his journey to Alameda, at any time within six months from the purchase of the ticket, without additional fare, although the railroad company has a shorter and direct route to Alameda, without an intermediate station, and has a rule requiring the passage to Alameda by the longer route to be continuous.

ID.—NOTICE OF RULES CONTRAVENING STATUTE.—The purchaser of a ticket conferring the right to go between two stations by way of an intermediate station cannot be deprived of his right to stop over at the intermediate station, by reason of the rule or custom of the railroad company to issue only alternative tickets, making the intermediate station one terminus named in the ticket; and the passenger is not bound to take notice of any rule or regulation of the railroad company's requiring the passenger to ride from the intermediate by the longer route without stopover, in contravention of the statute.

ID.—CORPORATION NOT SUBJECT TO CODE—RIGHTS OF LESSEE.—The fact that a railroad corporation was organized prior to the adoption of the Civil Code, and is not subject to its provisions, cannot inure to the benefit of a lessee of the road which is a corporation organized under the

code, nor exempt the lessee from the obligations imposed upon it as a code corporation.

APPEAL—DISQUALIFICATION OF JUSTICE—RELATIONSHIP TO STOCKHOLDER OF CORPORATION.—The fact that a justice of the supreme court is a first cousin by marriage, or cousin german, to one of the stockholders of a corporation does not disqualify him to hear and participate in the decision of a case in which the corporation is interested.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Foshay Walker, Baker, Wines & Dorsey, E. L. Craig, S. C. Denson,* and *Garret W. McEnerney,* for Appellant.

The complaint in this case does not state facts sufficient to constitute any cause of action in favor of the plaintiff against the defendant, because section 490 of the Civil Code does not give any stopover rights. Independently of statutory enactment, a passenger on a railroad train, having a ticket entitling him to ride from one station to another, has no right to stopover at an intermediate station and afterward to resume his journey upon the same ticket, except by virtue of some special contract made between him and the carrier. (*Drew* v. *Central Pac. R. R. Co.,* 51 Cal. 425; *McClure* v. *Philadelphia etc. R. R. Co.,* 34 Md. 532; 6 Am. Rep. 345; *Dietrich* v. *Pennsylvania etc. R. R. Co.,* 71 Pa. St. 432; 10 Am. Rep. 711; *Stone* v. *Chicago etc. Ry. Co.,* 47 Iowa, 82; 29 Am. Rep. 458; *Cheney* v. *Boston etc. R. R. Co.,* 11 Met. 121; 45 Am. Dec. 190; *Yorton* v. *Milwaukee etc. R. R. Co.,* 54 Wis. 234; 41 Am. Rep. 23; note to *Commonwealth* v. *Power,* 41 Am. Dec. 479.) A passenger who voluntarily leaves a railroad train at an intermediate station, having a ticket entitling him to go to a more remote station, thereby terminates the contract of carriage, and must pay additional fare upon resuming his journey. (*Drew* v. *Central Pac. R. R. Co.,* 51 Cal. 425; note to *Commonwealth* v. *Power,* 41 Am. Dec. 479; *Hatten* v. *Railroad Co.,* 39 Ohio St. 375; 13 Am. & Eng. R. R. Cas. 53, and note p. 55. See, also, note to *O'Brien*

v. *New York Cent. etc. R. R. Co.*, 80 N. Y. 236; 1 Am. &
Eng. R. R. Cas. 262; 1 Redfield on Railways, sec. 28,
p. *97, and note; *State* v. *Overton*, 24 N. J. L. 435;
61 Am. Dec. 671.) "Stopover" privileges are only
derived from express contract or from implication of
law arising from some express statutory regulation.
(*Cheney* v. *Boston etc. R. R. Co.*, 11 Met. 121; 45 Am·
Dec. 190, and note; *Johnson* v. *Concord R. R. Corp.*,
46 N. H. 213; 88 Am. Dec. 199, and note; *State* v. *Over-
ton*, 24 N. J. L. 435; 61 Am. Dec. 671, and note.)
Section 490 of the Civil Code, upon which plaintiff
relies to give him the right to stop over, was repealed
by section 22 of article XII of the California constitu-
tion of 1879, which placed the full and exclusive power
of fixing railroad transportation charges within this
state in the railroad commissioners. Section 490 de-
pends upon section 489, and the repeal of the latter sec-
tion operated to repeal the former. (*San Francisco* v.
*Spring Valley Water Works*, 48 Cal. 494, 529, 530; *People*
v. *Parks*, 58 Cal. 654; *Warren* v. *Charlestown*, 2 Gray, 84;
*Allen* v. *Louisiana*, 103 U. S. 80; *O'Brien* v. *Krenz*, 36
Minn. 136; *Slauson* v. *Racine*, 13 Wis. 398; *State* v.
*Perry Co.*, 5 Ohio St. 497; Cooley on Constitutional
Limitations, 178, et seq.; *French* v. *Teschemaker*, 24 Cal.
546, 553, 554; *Reed* v. *Omnibus R. R. Co.*, 33 Cal. 219;
*Wills* v. *Austin*, 53 Cal. 178, 179.) In an action for a
penalty, growing out of a statutory right, and for which
no relief was afforded at the common law, the party
must show himself clearly entitled to the relief, and the
statute will be strictly construed against him. (Dwarris
on Statutes, 611; Sedgwick on Statutory Construction,
319; *Curran* v. *Shattuck*, 24 Cal. 432; *San Francisco etc.
Water Co.* v. *Alameda Water Co.*, 36 Cal. 644; *Gimmy* v.
*Doane*, 22 Cal. 635; *San Diego Lumber Co.* v. *Wooldredge*,
90 Cal. 574; *Elliott* v. *Railroad Co.*, 99 U. S. 576; *People*
v. *Tisdale*, 57 Cal. 104; *Occidental Building and Loan Assn.*
v. *Sullivan*, 62 Cal. 394; *People* v. *Perry*, 79 Cal. 114.)
That the statute under consideration is a penal statute
cannot be doubted, as similar statutes are uniformly

held to be penal. (See Sutherland on Statutory Construction, secs. 208, 358, 360; 1 Rorer on Railroads, c. 20, entitled "Penalties and Forfeitures," pp. 570, 571, 576; *Bond* v. *Wabash etc. Ry. Co.*, 67 Iowa, 712; *State* v. *Chicago etc. Ry. Co.*, 37 Fed. Rep. 497.) The condition in section 490, as set forth in the words, "on being tendered the fare therefor fixed as provided in the preceding section," and the words "every such ticket," is a condition precedent to the operation of the section, which failing, the whole section dependent upon it fails. (4 Kent's Commentaries, 124, 125; *State* v. *Douglass*, 5 Sneed, 608.) Section 490 of the Civil Code, upon which plaintiff relies to give him the privilege of "stopover," does not apply to the defendant Southern Pacific Company, because it does not apply to its lessor, the Central Pacific Railroad Company. The Central Pacific Railroad Company, being a corporation in existence when the code took effect, was, by section 288, excluded from the provisions of the code referred to in said section, and the defendant, being its exclusive lessee, in possession, operating its line, stood precisely in the same position, with no greater rights or privileges, and subject to no greater burdens. (*Gilmore* v. *City of Utica*, 121 N. Y. 561; *McMillan* v. *Michigan etc. R. R. Co.*, 16 Mich. 79; 93 Am. Dec. 211; *Sprague* v. *Smith*, 29 Vt. 421; 70 Am. Dec. 426; *McCall* v. *Chamberlain*, 13 Wis. 637; *Cook* v. *Milwaukee etc. Ry. Co.*, 36 Wis. 48; 1 Wood's Railway Law, sec. 203, p. 578.)

*Foshay Walker, Garret W. McEnerney*, and *H. L. Gear*, upon rehearing for Appellant.

Section 490 of the code should not be construed as granting a stopover right, as such a construction would be unreasonable and open the door for fraud and imposition, as it would give the passenger the right to stop off at any intermediate station, and to resume his trip at any time within six months, even though he had surrendered his ticket. (See *Beebe* v. *Ayers*, 28 Barb. 279; *Breen* v. *Texas & Pac. R. R. Co.*, 50 Tex. 46.) The

custom requiring a passenger to surrender his ticket at
the inception of his passage is a reasonable custom for
the prevention of fraud. (*Northern R. R. Co.* v. *Page,*
22 Barb. 132.) Section 490 of the code should be rea-
sonably interpreted, and fraud and injustice excluded,
and an interpretation which leads to fraud and injustice
is not reasonable, and ought not to be countenanced.
(23 Am. & Eng. Ency. of Law, 361, 558, and cases cited.)
The provision entitling the holder of the ticket to ride
upon the cars "at any time within six months there-
after" serves to limit the time within which the ride
must be commenced, and the ticket used after its issu-
ance, and it would seem that they do not limit the time
within which the ride must be completed, or qualify the
terms of the contract of carriage after the ride has once
been commenced and the ticket used. The rules of the
common law must be considered in interpreting section
490 of the code, as the code is presumed to be declara-
tive of the common law, unless an intent to change it
distinctly appears. (*People* v. *Langtree,* 64 Cal. 259;
*Canavan* v. *Gray,* 64 Cal. 8; *Lux* v. *Haggin,* 69 Cal. 367,
374, 375; *Churchill* v. *Pacific Improvement Co.,* 96 Cal.
492, 493; *Claiborne* v. *Castle,* 98 Cal. 33.) All reason-
able usages of the railroad company enter into and be-
come part of its contracts with its passengers. (*North-
ern R. R. Co.* v. *Page,* 22 Barb. 130–32; *Beebe* v. *Ayres,*
28 Barb. 275, 280; *Terry* v. *Flushing etc. R. R. Co.,* 13
Hun, 361; *Johnson* v. *Concord R. R. Co.,* 46 N. H. 221;
88 Am. Dec. 199; *Lietrich* v. *Pennsylvania etc. R. R. Co.,*
71 Pa. St. 432; 10 Am. Rep. 711; *Cheney* v. *Boston etc.
R. R. Co.,* 11 Met. 123; 45 Am. Dec. 190; *Chicago etc.
R. R. Co.* v. *Randolph,* 53 Ill. 510; 5 Am. Rep. 60; *State*
v. *Campbell,* 32 N. J. L. 312; *Brown* v. *Howard,* 1 Cal.
424; *Hayes* v. *Wells, Fargo & Co.,* 23 Cal. 188, 189; 83
Am. Dec. 89; *Taylor* v. *Castle,* 42 Cal. 371; *Schroeder* v.
*Schweizer L. T. V. G.,* 66 Cal. 298.) Section 490 should
be construed in harmony with the settled rule declared
by the courts, under the common law, that the contract
of a railroad company to convey a passenger from one

station to another is an entire contract, in the absence
of an agreement making it divisible, and that the obli-
gation created by the sale of an ordinary passage ticket
between two local points on the same railroad, where
not otherwise specified, is for one continuous trip, and
that neither the passenger nor the carrier has the right,
without the consent of the other, to split the contract
up into parts and perform it piecemeal, though the pas-
senger may elect to perform any part of the contract
in lieu of the whole, and if he leaves the train at an in-
termediate station after he has commenced his journey,
he releases the railroad company from further perform-
ance at another time.   (*Drew* v. *Central Pac. R. R. Co.*,
51 Cal. 428; *Churchill* v. *Chicago etc. R. R. Co.*, 67 Ill.
390–93; *Dietrich* v. *Pennsylvania etc. R. R. Co.*, 71 Pa. St.
432–37; 10 Am. Rep. 711; *Stone* v. *Chicago etc. R. R. Co.*,
47 Iowa, 82–87; 29 Am. Rep. 458; *Roberts* v. *Koehler*, 30
Fed. Rep. 94–96; *McClure* v. *Philadelphia etc. R. R. Co.*,
34 Md. 532–36; 6 Am. Rep. 345; *Hamilton* v. *New York
Cent. R. R. Co.*, 51 N. Y. 104, 105; *Cheney* v. *Boston etc.
R. R. Co.*, 11 Met. 122, 123; 45 Am. Dec. 190; *Oil Creek
etc. Ry. Co.* v. *Clark*, 72 Pa. St. 231–35; *Cleveland etc.
R. R. Co.* v. *Bartram*, 11 Ohio St. 457, 462, 463; *Hatten*
v. *Railroad Co.*, 39 Ohio St. 375, 377; *Auerbach* v. *New
York etc. R. R. Co.*, 89 N. Y. 284, 285; 42 Am. Rep. 290;
*Little Rock etc. R. R. Co.* v. *Dean*, 43 Ark. 530–33; 51
Am. Rep. 584; *State* v. *Overton*, 24 N. J. L. 435, 438; 61
Am. Dec. 671; *Walker* v. *Wabash etc. R. R. Co.*, 15 Mo.
App. 340; *Gale* v. *Delaware etc. R. R. Co.*, 7 Hun, 670,
673; *Terry* v. *Flushing etc. R. R. Co.*, 13 Hun, 362; *Breen*
v. *Texas & Pac. R. R. Co.*, 50 Tex. 46; *Wyman* v. *North-
ern Pac. R. R. Co.*, 34 Minn. 210, 212; Hutchinson on
Carriers, sec. 575.)   The plaintiff's ticket accepted with-
out objection created an alternative contract of carriage
to Oakland or Alameda, and when plaintiff alighted at
Oakland his ticket became *functus officio*.   It is a well-
settled principle of the common law, of which the Civil
Code is expressly declarative, that a party to an alterna-
tive contract who has an option to choose one of two

alternatives, must choose one of the alternatives in its entirety, and cannot choose them both, and that when his election is once made it is binding upon him, and cannot be revoked. (Civ. Code, sec. 1450; Bishop on Contracts, sec. 808; 1 Bouvier's Institutes, 269; 5 Lawson's Rights, Remedies, and Practice, sec. 2512.) A passenger has no inherent right to select a more circuitous route, but should select the most direct route, unless by consent of the railroad company he is permitted to travel by a circuitous route. (*Bennett* v. *New York Cent. etc. R. R. Co.*, 69 N. Y. 594; 25 Am. Rep. 250.)

*C. M. Jennings*, for Respondent.

Neither section 489 nor 490 of the Civil Code have been repealed by section 22 of article XII of the constitution. Moreover, this section of the constitution is itself illegal and void, as it makes the rates fixed by the railroad commissioners final and conclusive. (*Chicago etc. Ry. Co.* v. *Minnesota*, 134 U. S. 418–52, et seq.; *Mercantile Trust Co.* v. *Texas & Pac. R. R. Co.*, 51 Fed. Rep. 529; *Richmond etc. Co.* v. *Trammel*, 53 Fed. Rep. 196; *Georgia etc. Banking Co.* v. *Smith*, 128 U. S. 174–79.) But whether section 489 of the Civil Code is repealed or not is wholly immaterial in the case at bar, as the legislature had the power to require carriers to provide tickets and attach the right to stop over thereto. (Const., art. XII, secs. 8, 10, 15, 17, 20, 21; Civ. Code, sec. 465, subd. 10; *Dryden* v. *Grand Trunk Ry. Co.*, 60 Me. 512; *Carpenter* v. *Grand Trunk Ry. Co.*, 72 Me. 388; 39 Am. Rep. 340; *Stone* v. *Farmers' etc. Co.*, 116 U. S. 317.) Section 490 of the Civil Code is not a penal statute, but is remedial, entirely changing the common law as to the subject matter of which it treats, and should be liberally construed. (Potter's Dwarris on Statutes, 73, 74; *Johns* v. *Johns*, 3 Dow, 15; *Gillett* v. *Moody*, 3 N. Y. 479; *People* v. *Runkle*, 9 Johns. 147.) In construing this section the legislative intent should be ascertained. (Dwarris on Statutes, 144; Cooley's Constitutional Limitations, 5th ed., 213, 218–22; *Chicago etc. Ry. Co.* v.

*Dey,* 35 Fed. Rep. 866, 874; *Lovel* v. *Stowell,* Plow. 366; *United States* v. *Freeman,* 3 How. 556, 564, 565; *United States* v. *Hartwell,* 6 Wall. 386; *Oates* v. *National Bank,* 100 U. S. 239–44; *The Emily,* 9 Wheat. 388; *Brown* v. *Barry,* 3 Dall. 367; *Schumate* v. *Williams,* 34 Ga. 245; *Taylor* v. *United States,* 3 How. 197; *United States* v. *Hodson,* 10 Wall 395; *United States* v. *Kirby,* 7 Wall. 482; *Woodruff* v. *State,* 3 Ark. 296; *Walker* v. *Springfield,* 94 Ill. 364–71; *People* v. *Hoffman,* 97 Ill. 234; *Commonwealth* v. *Kimball,* 14 Pick. 370; *Costner* v. *Walrod,* 83 Ill. 171; 25 Am. Rep. 369; *Tracy* v. *Troy etc. R. R. Co.,* 38 N. Y. 433; 98 Am. Dec. 54; *Tounele* v. *Hall,* 4 N. Y. 144; *Smith* v. *People,* 47 N. Y. 330; *People* v. *Clute,* 50 N. Y. 451; 10 Am. Rep. 508; *In re Folsom,* 56 N. Y. 66; *People* v. *Hyde,* 89 N. Y. 18; *Fontaine* v. *Southern Pac. R. R.,* 54 Cal. 652; *Knowles* v. *Yates,* 31 Cal. 86.) Interpretation must be reasonable. (Civ. Code, sec. 3542.) An interpretation which gives effect is to be preferred to one that makes void. (Civ. Code, sec. 3541, Deering's ed., and cases there cited.) The mention of fare in section 490 of the Civil Code is merely incidental to the subject matter of the section, and the incident cannot repeal the subject. (Civ. Code, sec. 3540.) Repeals by implication are not favored. (*Cole* v. *Fisher,* 66 Cal. 441; *Estate of Beech,* 63 Cal. 459; Cooley's Constitutional Limitations, 5th ed., 183, old ed., 152.) One statute is not to be construed as repealing another if it is possible to reconcile them. (*McCool* v. *Smith,* 1 Black, 459; *United States* v. *Walker,* 22 How. 299; *In re Yick Wo,* 68 Cal. 304; 58 Am. Rep. 12.) When the subject matter or object of two statutes is different there is no repeal by implication. (*People* v. *Platt,* 67 Cal. 22; *Rosborough* v. *Boardman,* 67 Cal. 118.) It must clearly appear the whole subject matter of the old statute was revised, and that the new one was intended as a substitute for the whole thereof, before any repeal by implication can take place. (*United States* v. *Barr,* 4 Saw. 254–56; *United States* v. *Tynen,* 11 Wall. 95; *Murdock* v. *Memphis,* 20 Wall. 617; *Treadwell* v. *Yolo County,* 62 Cal. 564.) And,

if there be doubt in the judicial mind, validity of the law must be upheld. (*United States* v. *Rhodes*, 1 Abb. U. S. 49; *Munn* v. *Illinois*, 94 U. S. 113; Cooley's Constitutional Limitations, 5th ed., 213, 218–22; *Chicago etc. Ry.* v. *Dey*, 35 Fed. Rep. 866, 874.) It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it. (*People ex rel. Burr* v. *Dana*, 22 Cal. 20; *Carson* v. *Central R. R. Co.*, 35 Cal. 335; *People* v. *Lynch*, 51 Cal. 28; 21 Am. Rep. 677.) A law must be applied according to its manifest intent, and a thing within the letter is without the statute if without its intention. (*Kinsey* v. *Kellogg*, 65 Cal. 114.) The words of section 490, "on being tendered fare therefor fixed as provided in the preceding section," are equivalent to the words "lawful fare," and all reference to fare may be eliminated from section 490 without affecting the legislative intent, or impairing the reciprocal rights of the carrier and the passenger—the one a lawful fare, the other the ticket, etc.—at all. (Civ. Code, sec. 465, subd. 10, secs. 2173–87; *Pennsylvania R. R. Co.* v. *Sly*, 65 Pa. St. 205; *Boyle* v. *Philadelphia etc. R. R. Co.*, 54 Pa. St. 310; *Campbell* v. *Marietta etc. R. R. Co.*, 23 Ohio St. 168.) A statute remedial in its object, if its meaning is doubtful, will be so construed as to suppress the mischief and advance the remedy. (*Toomy* v. *Dunphy*, 86 Cal. 642.) Section 490 of the Civil Code is not dependent at all on section 489, and certainly the sections are not so mutually connected with and dependent on each other as to warrant a belief that the legislature would not have passed one without the other. (Cooley's Constitutional Limitations, 5th ed., 183, 213, 218–22.) Section 288 of the Civil Code does not exempt the Central Pacific Railroad Company from the operation and regulation of its business by part IV of division 1 of that code, but conceding that it does, still it could not transfer such exemption, by lease or otherwise, to the Southern Pacific Railroad Company or any other corporation. (Civ. Code, secs. 700–03, 1045; Cooley on

Taxation, 145; *Morgan* v. *Louisiana,* 93 U. S. 217; *Wilson* v. *Gaines,* 103 U. S. 421; *St. Louis etc. R. R. Co.* v. *Berry,* 113 U. S. 465; *Chesapeake etc. R. R. Co.* v. *Miller,* 114 U. S. 184; *Louisville etc. R. R. Co.* v. *Palmes,* 109 U. S. 244, 250, 257; *Memphis etc. R. R. Co.* v. *Railroad Commrs.,* 112 U. S. 609.) A rule inconsistent with general law is a nullity. (*Chicago etc. Ry. Co.* v. *People,* 56 Ill. 365; 8 Am. Rep. 690; *Merrihew* v. *Milwaukee etc. R. Co.,* 5 Am. Law Reg. 364; *Williams* v. *Great Western Ry. Co.,* 10 Exch. 15.) So, also, any rule infringing the right of· passenger to be carried, for such right is superior to any regulation of the company. (*Day* v. *Owen,* 5 Mich. 520; 72 Am. Dec. 62; Thompson on Carriers, 306; Const. 1879, art. XII sec. 8.) A passenger having surrendered his ticket is entitled to ride to the end of his journey whether he received a check or not. (*Chicago etc. R. R. Co.* v. *Griffin,* 68 Ill. 499.) And after surrendering his ticket, if the passenger is expelled for nonpayment of fare, the company is liable. (*Pittsburg etc. Ry. Co.* v. *Hennigh,* 39 Ind. 509.)

*Thomas V. Cator,* also for Respondent.

The ticket was a contract, and its terms are the same as if the law was written or printed on it, as the law entered into and formed a part of it. (*Walker* v. *Whitehead,* 16 Wall. 314, 317; *Blanchard* v. *Russell,* 13 Mass. 1; 7 Am. Dec. 106; *Hicks* v. *Hotchkiss,* 7 Johns. Ch. 306; 11 Am. Dec. 472; *Mather* v. *Bush,* 16 Johns. 233, 237; 8 Am. Dec. 313.) Section 490 of the Civil Code is not repealed. The words therein, "fare therefor fixed as provided in the preceding section," should be construed as if they read "provided in the law," as the preceding section was law. Force must be given to every part of a statute, and to do this the meaning of the words may be enlarged. (*French* v. *Teschemaker,* 24 Cal. 518, 539; *People* v. *Hyde,* 89 N. Y. 18.) Every thing necessary to make interpretation reasonable is implied. (*Buck* v. *Burk,* 18 N. Y. 339, 341.) Sections may be rejected as

named, and others imported into the place. (*People* v. *King*, 28 Cal. 272; *Donlon* v. *Jewett*, 88 Cal. 530; *Greer* v. *State*, 22 Tex. 588; *Tracy* v. *Troy* etc. *R. R. Co.*, 38 N. Y. 433; 98 Am. Dec. 54; *People* v. *Clute*, 50 N. Y. 451; 10 Am. Rep. 508.) The failure of the Central Pacific Railway Company to reorganize under section 287 of the Civil Code did not exempt it from section 490 of the Civil Code and similar provisions. Exemption from general laws must be clear, certain, and strictly construed. (Cooley on Taxation, 146.) The Central Pacific Railway Company, if it had any immunity from general law, did not and could not assign it to the Southern Pacific Company, because such immunities are personal to the identical corporation, and non-assignable, except by express consent of the state. (*Morgan* v. *Louisiana*, 93 U. S. 217; *Wilson* v. *Gaines*, 103 U. S. 417, 421; *Louisville* etc. *R. R. Co.* v. *Palmes*, 109 U. S. 250–57; *Memphis R. R. Co.* v. *Railroad Commrs.*, 112 U. S. 609; *St. Louis R. R. Co.* v. *Berry*, 113 U. S. 465; *Chesapeake* etc. *R. R. Co.* v. *Miller*, 114 U. S. 176–84.) Plaintiff had a right to travel by any route which the defendants operated as a common carrier, whether the shortest or not. (Civ. Code, secs. 481, 2168.) Section 490 of the Civil Code having declared stopover rights as belonging to every ticket issued by a railroad corporation, it is not within the power of the company to make rules contrary to general law, or compel a person to accept a contract different from that prescribed by statute. A rule inconsistent with a general law is a nullity. (*Chicago* etc. *R. R. Co.* v. *People*, 56 Ill. 365; 8 Am. Rep. 690; *Merrihew* v. *Milwaukee* etc. *R. R. Co.*, 5 Am. Law Reg. 364; *Williams* v. *Great Western R. R. Co.*, 10 Exch. 15; Civ. Code, sec. 2174; *Day* v. *Owen*, 5 Mich. 520; 72 Am. Dec. 62; Thompson on Carriers, 306; Const., art. XII, sec. 8.) The contract provided for by section 490 of the Civil Code is one beneficial and remedial, to be liberally construed with a view to effect its objects. (Civ. Code, sec. 4.) The right to stop over was a right the plaintiff had under the

contract, which could only be waived by signing a written waiver. (*Schroeder* v. *Schweizer L. T. V. Co.*, 66 Cal. 299; Civ. Code, sec. 2176.) Plaintiff had a right to treat Oakland as a place to stop over, and if the word " Oakland," as printed on the ticket, was intended in any manner to operate as a condition to affect or destroy plaintiff's right to stop over at Oakland, such word is a nullity and void. (Civ. Code, sec. 1441.) Words are to be taken most strongly against those who use them. (Civ. Code, sec. 1069; Elphinstone on Interpretation, rule 21; *Muller* v. *Boggs*, 25 Cal. 182; *Hooper* v. *Wells*, 27 Cal. 11; 85 Am. Dec. 211.) Alternative destinations are not permitted in the contract or ticket defined by law. (Civ. Code, sec. 490.) It was the duty of the defendant company, upon taking up the plaintiff's ticket, to give a stopover check to the plaintiff to stop at Oakland; and the fact that he surrendered the ticket did not take away his right to ride to the end of his journey. (*New York etc. R. R. Co.* v. *Winter*, 143 U. S. 60, 72, 73; *Chicago R. R. Co.* v. *Griffin*, 68 Ill. 499; *Pittsburg etc. R. R. Co.* v. *Hennigh*, 39 Ind. 509; *Indianapolis etc. R. R. Co.* v. *People*, 91 Ill. 452.)

BEATTY, C. J.—The three principal questions arising in this case were very fully and elaborately argued by counsel, both orally and in the printed briefs filed prior to its submission, and they were as carefully considered in the opinion of the court heretofore filed, wherein it was held: 1. That section 490 of the Civil Code is still in force; 2. That it confers stopover privileges upon the holders of the tickets therein provided for; and 3. That the defendant is subject to its provisions. As to these points, our views remain unchanged, and nothing further need be said concerning them. The rehearing, indeed, was ordered with special reference to a question which, although it had been stated in the briefs, had not been discussed at the oral argument, and had been but slightly considered in the opinion of the court. This question, to which the reargument was practically

confined, may be briefly stated as follows: Did the plaintiff, by purchasing and accepting a ticket which, in terms and in fact, gave him the alternative right to go to Oakland or Alameda, become thereby entitled to go to Oakland, stop off there, and afterwards resume his journey to Alameda? When this question is considered in the light of the principles established by our former decision, and with reference to the facts stated in the opinion and other facts appearing in the record, it is of comparatively easy solution. The defendant had a ferry and railroad line which it was operating between the foot of Market street, in San Francisco, and the city of Alameda, and which passed through the city of Oakland, where there was a station at which passengers were accustomed to enter and leave its cars. The fact that defendant had another and more direct line of road (and ferry) between the same termini did not relieve it of its statutory obligation to fix (either alone or in conjunction with the railroad commission) a regular passenger rate by the longer route. The right to operate the road and the obligation to fix such regular rate are correlative. It had, in fact, complied with the statute, and fixed the rate at fifteen cents, and this was well known, not only to the plaintiff, but to the public generally. Such being the case, the plaintiff, desiring to go from San Francisco to Alameda via Oakland, tendered the regular fare, and demanded the ticket which it was the duty of the defendant to furnish. He received a ticket in the form set out in our original opinion, which was the only ticket the defendant was accustomed to issue to passengers desiring to go by either of two routes to Oakland, or either of two other routes to Alameda. But the fact that the ticket gave the plaintiff his choice of these various routes and different destinations made it none the less effective as a ticket from San Francisco to Alameda via Oakland. What he wanted was a ticket of that particular kind, with all the lawful privileges thereto attached, and it was not in the power of the defendant to deprive him

of such privileges by offering him other privileges in exchange. This conclusion does not involve the consequences that are apprehended by counsel for appellant. We do not hold, and it does not follow from the views herein expressed, or from any thing decided or said by way of argument in our original opinion, that there can be no ticket sold on any line of road which is not a stopover ticket. We only hold that there must be a regular passenger rate established from one depot to another, and that a passenger who tenders the regular fare is entitled to a ticket to his place of destination, which ticket, under the law, gives him a right to stop over at an intermediate station. And the railroad company cannot demand the regular rate, and at the same time deny the privilege which the law confers upon all who pay such rate. If, in consideration of an abatement from the regular established rate, a passenger voluntarily accepts an excursion or other limited ticket, an entirely different case is presented. Here the regular established fare was tendered and accepted, and a ticket issued, which was the only ticket a passenger from San Francisco to Alameda via Oakland could obtain—the only ticket provided by the defendant. This being so, the defendant cannot be permitted to say that it was not the ticket which the statute obliged it to provide and issue, and this is more especially true in view of the fact that it contained nothing which in terms denied or assumed to curtail the rights conferred by the statute.

But it is said that the ticket is not the contract; that it is a mere token or voucher, and that it is the duty of the passenger to inform himself of the rules and regulations of the carrier, which really determine his rights. This is, perhaps, true to a certain extent. But the passenger is not bound to take notice of any rule or regulation which contravenes the law of the land. So far as the law fixes the terms of the contract it cannot be varied by rules of the company, known or unknown, unless assented to by the passenger. We have held that under the law of California the ticket issued by a

railroad company upon receipt of the regular fare from one depot to another gives the holder the right to stop over at an intermediate station, and to resume his journey at any time within six months; and, if this is so, it matters not how well it may be known to a particular passenger that this right is contested or denied by the company. He nevertheless acquires, by payment of the regular fare, all the rights which the statute gives him. The passenger who is informed of the claim and practice of the carrier is in no worse position than one who is not informed. So far as the law goes it protects all alike. These views are conclusive of the question submitted for reargument, and for the reasons here stated, and those set forth in the original opinion, the judgment and order of the superior court are affirmed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J., FITZGERALD, J., and DE HAVEN, J., concurred.

McFARLAND, J., dissenting.—I dissent. There was nothing in the argument on rehearing which in the least changes my mind as to these propositions: 1. That section 490 of the Civil Code does not require a railroad company to " provide" or " furnish" a stopover ticket, under either the legal or the common meaning of that word; and 2. That the ticket which appellant did " furnish" respondent was not, on its face, a stopover ticket, but merely gave him the right to go either to Oakland or Alameda—not to both; and that he well knew the meaning and purpose of the ticket when he accepted it. This action is not for refusing respondent the kind of ticket he wanted, but for refusing to do something for which the ticket he accepted did not provide. In my opinion, the judgment can be affirmed only upon the theory that if respondent had paid the proper fare he could ride, and get off, and get on again, as often as he pleased, upon any sort of a ticket, or without any ticket at all.

The following are the opinions above referred to, rendered in Bank on the sixth day of October, 1894:

GAROUTTE, J.—This action is brought to test the right of the holder of a railroad passenger ticket to stop at an intermediate station, and subsequently renew his journey on another train without further payment. Defendant is a common carrier of passengers, by ferry and railroad, between San Francisco and Oakland and Alameda. It has several lines between these points, and has provided and sells but one form of ticket from San Francisco to Oakland and Alameda. It is as follows:

---

### S. P. Co.—Ferry and Local Trains.

**ONE**
**PASSAGE ONLY**
**CC**
**II**

**SAN FRANCISCO**    15cts.

## OAKLAND or ALAMEDA

*J. H. Goodman.* S
Gen. Pass. and Ticket Agent.

---

The ticket entitles the holder to take either of three different lines, all operated by defendant, two of which pass through Oakland.

In May, 1891, plaintiff purchased such a ticket at the office of defendant at the foot of Market street, San Francisco, and proceeded with it to the ferry which carries the passengers to the Oakland pier in the city of Oakland, where defendant's railroad begins. He was required to pass through a gate on his way to the ferry. Here an employee of the defendant demanded his ticket. Plaintiff informed the gatekeeper that he desired to stop over at Oakland, and insisted upon retaining his ticket or receiving a check, which would be evidence of his right. He was informed that stopover tickets were not provided, and that no stop-over rights were allowed; and he was refused permission to go upon the ferry, except upon surrender of his ticket, which he then gave up. He proceeded by ferry and road to the intersection of Broadway and First streets, in the city of

Oakland, where he alighted, and remained attending to some private business for a short time. At this point all passenger trains passing over the road habitually stop, and from one thousand to fifteen hundred passengers get on and off daily. There is no station-house or station agent there, but passengers are received, and pay their fare to the conductor. Subsequently, he took the train for Alameda at the point where he alighted, and, his fare being demanded by the conductor, he refused to pay it, basing his refusal upon the facts stated. But, notwithstanding his statement of these matters to the conductor, he was ejected from the train.

The only question involved in this litigation is, Was the respondent entitled to a stopover privilege at the city of Oakland? He claims this stopover right under section 490 of the Civil Code, and that section reads as follows:

" SEC. 490. Every railroad corporation must provide, and, on being tendered the fare therefor fixed as provided in the preceding section, furnish to every person desiring a passage on their passenger cars a ticket which entitles the purchaser to a ride, and to the accommodations provided on their cars, from the depot or station where the same is purchased to any other depot or station on the line of their road. Every such ticket entitles the holder thereof to ride on their passenger cars to the station or depot of destination, or any intermediate station, and from any intermediate station to the depot of destination designated in the ticket, at any time within six months thereafter. Any corporation failing so to provide and furnish tickets, or refusing the passage which the same calls for when sold, must pay to the person so refused the sum of two hundred dollars."

The briefs of counsel contain an elaborate discussion of various legal principles that are claimed to be germane to the question here presented, and those principles which we deem necessarily involved in the final determination of this litigation will be taken up and discussed *seriatim*.

1. Appellant insists that the true construction of section 490 is: "Such ticket entitles the holder, at any time within six months after the issuance of the ticket, to ride from the depot where he purchased the ticket to the depot of destination named in the ticket, or to any intermediate station, or, if he so elects, he may start from any intermediate station, instead of where he bought the ticket, and ride to the depot of destination designated in the ticket." Notwithstanding the statute appears to be plain and explicit upon its face, it is insisted that the conjunctions "and" and "or" are convertible terms, and that the conjunction "and," as it appears in the section should be read "or." There are times when it is entirely manifest from the context that the intention of the law-making power can only be given effect by holding these terms convertible. And this rule of construction is adopted for the very purpose of giving that force and effect to the text which plainly appears from the context was intended to be given it by the author of its creation; but this license of construction is only to be exercised upon the lines indicated, and in all other cases these two words are to be read and construed as they stand upon the page. Ordinarily, they are in no sense interchangeable terms, but, upon the contrary, are used in the structure of language for purposes entirely variant. "There is a world of difference between the little words 'and' and 'or.'" (*State* v. *Beaucleigh,* 92 Mo. 497.) We see nothing here demanding the construction claimed. It is not plainly manifest that the legislature so intended. It is not manifest at all. The clause is full of meaning, reading it as it appears to the eye, and is entirely consistent with other portions of the section. If we should interpret "and" as "or" an entirely different meaning would be given the provision. This would be judicial legislation, pure and simple. Appellant contends for the construction claimed, because it is said that formerly so-called "competitive points" were favored, and the object of the statute was the prevention of greater charges from

intermediate stations to competitive points than were charged for longer distances from one competitive point to another.   In view of the fact that the legislature provided in the immediately preceding section (sec. 489) that the amount of passenger fares should be regulated according to the distance traveled, there would seem to be no necessity for further legislation upon that quetion. That evil, whatever it may have been, was called to the attention of the legislature, and cured by said section. The only effect upon the statute, by appellant's construction, is to give a passenger the right to board a train at an intermediate station, and ride to the point of destination upon a ticket purchased at some station which, from the place of destination, is beyond the intermediate point. We see no demand for legislation of the character outlined by appellant's construction of the statute.   The circumstance of a passenger purchasing a ticket from one point to another, and then only actually using it for a portion of the distance, would not seem to be an event of such common occurrence as to demand the needs of legislative action.  Again,  while not desirous of prejudging matters not necessarily involved in the consideration of the present case, we might remark that no legal rule now presents itself to our minds which ever denied a passenger the right to use a ticket of the character here contemplated from an intermediate station to the point of destination.   (*Auerbach* v. *New York etc. Co.*, 89 N. Y. 281; 42 Am. Rep. 290.)   And, if such was the law prior to the passage of section 490, we are justified in saying that the legislature, in enacting that provision, was not doing an idle thing, and must assume the provision was created for other purposes.   Appellant's position as to the construction of section 490 of the Civil Code is not tenable.

2. It is insisted that section 490 of the Civil Code, upon which plaintiff relies for his stopover right, was repealed by section 22 of article XII of the state constitution, and this claim of repeal is based upon the additional claim that the constitutional provision cited places

the full and exclusive power of fixing railroad transportation charges within this state in the railroad commissioners. It is insisted that the repeal of section 490 is occasioned by the repeal of section 489; that this constitutional provision repealed section 489—a section which pertains to the regulating and establishment of rates for freights and fares—and that section 490 is so dependent upon section 489 that it cannot stand alone, and the fall of section 489 therefore necessarily carries with it the destruction of section 490. We will not discuss the interesting question as to whether or not the repeal of section 489 was occasioned by the adoption of that portion of the constitution referring to the election, powers, and duties of railroad commissioners, but, for the purposes of the case alone, will concede that such repeal was had. The single question then remains, Did the repeal of section 489 result in the repeal of section 490? It was decided in the case of *Warren* v. *Mayor etc.*, 2 Gray, 84, that "when the parts of a statute are so mutually connected and dependent, as conditions, considerations, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, if some parts are unconstitutional and void, all the provisions which are thus dependent, conditional, or connected must fall with them." The rule is well stated in the foregoing quotation, and the principle there declared has been recognized and declared the true one by the courts of many states. Measured by this doctrine, can section 490 stand the test? Is it manifest that the legislature intended that such section should stand or fall with section 489? Is section 490 so closely connected with, and so entirely dependent upon, the preceding section that its very life ends at the moment when that section is no more? Would section 490 have been enacted by the legislature if section 489 had never been placed upon the statute book? These interrogatories are answered by appellant, and to the legal

CV. CAL.—35

soundness of those answers our attention shall now be addressed.

Section 489 provides that railroad corporations must fix and publish their rates of charges for freightage and fares from one depot to another on their various lines of road in this state, and declares a graduated scale of charges according to distance. It further provides that the maximum charges shall not exceed ten cents per mile for each passenger, nor fifteen cents per mile for each ton of freight transported upon its road, and also affixes a penalty for the violation of any of these provisions. Section 490 declares that the railroad company must provide, and, on being tendered the fare therefor fixed as provided in the preceding section, furnish to every passenger desiring passage on their passenger car a ticket which entitles the purchaser to certain rights and privileges which we have already considered; and this section also affixes a penalty for the violation of any of its provisions. In all portions thereof, save a single one, the section is entirely disconnected from, and independent of, section 489. With this single exception it appears to be full of its own vitality, and possessed of ample strength within itself to stand out alone; a law as independent and complete as any other section within the lids of the code. But it is said, in the language of defendant, to hold that section 490 is not dependent upon section 489, is to ignore the words of the section itself, namely, " on being tendered the fare therefor fixed as provided in the preceding section." This clause forms the connecting link between the sections, and upon the sole strength of that link depends the repeal or nonrepeal of section 490. It is claimed that it was the legislative intent that a passenger, in order to enjoy the rights and privileges granted by section 490, should tender the amount of fare fixed by the corporation, in accordance with section 489, and, that section being repealed, it is impossible to make a tender of the fare therein provided; that a tender of the fare fixed by a later act of the legislature, or the tender

of a fare fixed by the corporation itself in the absence of any law upon the subject, would be unavailing, and that consequently no rights and privileges can flow to the passenger under section 490.  It is insisted, in other words, that the fare tendered must be the fare fixed according to section 489, notwithstanding that section may have been repealed, and in substance replaced by other legislation.  We think appellant's interpretation of the section, as evidenced by the foregoing line of reasoning, too rigid and literal to satisfy well-settled rules of statutory construction.  The subject matter of these two sections has nothing in common.  The sections relate to distinct and independent matters of legislation.  Section 489 is in no way dependent upon section 490.  There is no mutuality in their connections and dependencies.  Section 490 could have been repealed, and the vitality of section 489 would not have been affected in the slightest degree.  In accord with appellant's contention, we have conceded that section 489 is repealed by implication by certain provisions of the constitution.  In order to declare a repeal by implication it must be entirely apparent, by a comparison of the two provisions, that the subject matter of section 489 is completely covered by the constitutional provision, and the repeal can be supported upon no other ground.  In other words, the constitutional provision is a substitute for the section.  It seems to follow that the question here presents itself in no different form, and involves no different principle than though section 489 had been amended upon the lines embraced within the repealing clause of the constitution.  If section 489 were still a live section, covering the general subject matter embraced within it at the beginning, no matter how changed and modified, no matter how drastic the treatment by amendment, surely defendant would still be bound by its provisions.  Hence, appellant's contention reduces itself to the single claim that the present law upon the question is not embraced in the " preceding section," and that the particular point of loca-

tion of the law upon the statute book is the all-controlling element. Such a construction would result in the sacrifice of substance to the merest form. The gist of section 489 is the requirement that railroad corporations fix their rates, and fix them in accordance with certain rules there declared, and within certain limits, and, to a certain extent, regulate fares and freights; and a reference to this section in section 490 is simply a recognition of that fact, nothing more. The words "as provided in the preceding section," might almost be termed surplusage. Their only possible purpose is to make more certain that which was already certain. Strike them from the section, and nothing of weight or substance is taken away. The construction would be the same with or without them. There surely is not that magic in them which holds the power of life and death over the entire section. The fare to be tendered, in order to give the passenger a right to his ticket, is the lawful fare; and it is immaterial whether that fare be fixed by the "preceding section," or by other provisions of the code, or by the corporation in the absence of law, or by the constitution itself. It is the fare regulated by law, and, if there be no law regulating the fare, then it is the regular fare charged by the corporation. At the date of the enactment of section 490 it happened that fares were regulated by the preceding section 489, and hence the reference. There is nothing to indicate that the enactment of these two sections partook of the character of a contract between corporations upon the one side and the people, through its legislative body, on the other, whereby corporations were granted valuable privileges and benefits under section 489 in consideration of reciprocal valuable privileges and benefits extended to the traveling public under section 490. It is further apparent that such conditions did not surround the creation of these sections, for we find the substance of section 489 to have been the law of this state for many years prior to the adoption of the codes. (Stats. 1861, p. 625.) We conclude

that it was not the intention of the legislature that these two sections should be taken as a whole, that section 490 should stand only while section 489 stood, and that the fall of section 489 should likewise mark the fall of section 490. We see no reason why the legislature should do such a thing, and such an intention is not manifest from the context. The repeal of section 489 does not result in the repeal of section 490.

3. The Central Pacific Company leased to the Southern Pacific Company certain railroads for the period of ninety-nine years, and also assigned to the Southern Pacific Company certain leases it held of other roads. These leases included all the rolling-stock, telegraph lines, steamboats, wharves, piers, and all other property, both real and personal, used in connection with these roads, together with the appurtenances thereto belonging, with the right to possess, use, maintain, and operate and enjoy said property. The leases held by the Central Pacific Company were assigned " with the right to take, hold, operate, maintain, and enjoy said railroads and other property in the same manner as the Central Pacific Company holds, operates, enjoys, and maintains the same under said leases." It is now claimed that section 490 of the Civil Code, upon which plaintiff relies to give him the privilege of "stopover," does not apply to the defendant, the Southern Pacific Company, because it does not apply to its lessor, the Central Pacific Railroad Company, and section 288 of the Civil Code is relied upon to show its nonapplicability to the Central Pacific Railroad Company. That section provides: " No corporation formed or existing before 12 o'clock, noon, of the day upon which this code takes effect, is affected by the provisions of part IV of division 1 of this code, unless such corporation elects to continue its existence under it as provided in section 287; but the laws under which such corporations were formed and exist are applicable to all such corporations, and are repealed subject to the provisions of this section." The Central Pacific Railroad Company has not

elected to continue its existence under the law found in part IV of division 1 of the Civil Code; and section 490 being found therein, it would appear that that corporation was not bound by its provisions, for this language is comprehensive, and, judged by its face alone, has no uncertain meaning. But it is claimed by appellant that section 490 is highly penal in its character. If this be true the power of the legislature to create penal statutes, and thereupon enact that they should be only applicable to corporations created subsequent to a certain time, may well be doubted. Such an exception would appear to be beyond the limits of legitimate legislation. This court said in the case of *City of Pasadena* v. *Stimson*, 91 Cal. 238: "A law is constitutional and general when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction. It is not general or constitutional if it confers particular privileges, or imposes peculiar *disabilities or burdensome conditions in the exercise of a common right*, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." But we will not enter into a detailed examination of section 288, with the object of determining its true force and effect as to either of these positions. For the purposes of this case we will concede that by reason of that section the provisions of section 490 do not apply to the Central Pacific Company. That much being conceded, is its lessee, the Southern Pacific Company, by virtue of its leases, assignments, etc., likewise unaffected by the provisions of that section? The Southern Pacific Company is a foreign corporation, and was organized under the laws of the state of Kentucky, in March, 1884—more than ten years after the enactment of sections 288 and 490 of the Civil Code; and, aside from any rights, privileges, or exemptions passing to it by virtue of these leases and assignments, it only exists in this state, and is enabled to do business in this state, by virtue alone of those provisions of the code which, we

have conceded, have no binding force and effect upon the Central Pacific Company. We are unable to appreciate the importance and gravity with which appellant surrounds its contention in this regard. A corporation, organized and carrying on its business under a certain set of laws, leases and assigns all or portions of its property to another corporation, organized and carrying on its business under another and different set of laws. Do such leases, assignments, and transfers give the second corporation the right to thereafter conduct its business under the laws which were only applicable to the first corporation? Such contention can have no support in the law. Prior to its transactions with the Central Pacific Company the Southern Pacific Company, in the conduct of its business, was bound by the provisions of section 490 of the Civil Code, and no man or corporation, by contract or otherwise, possessed the power to relieve it in the conduct of its business from whatever restrictions or burdens were imposed by that section. These restrictions and burdens were imposed upon it by legislative power, and it is to that power alone it must look to be relieved of them. When organized and ready to do business in this state part IV, division 1, of the Civil Code, formed the law regulating its conduct and defining its rights and duties; and now, by the sole virtue of a business transaction with another corporation, it is claimed that this entire body of law has become nugatory, and, in effect, repealed, as to such corporation. The law cannot be evaded in that way. It is not the legal method recognized for effacing a law from the statute books. The Southern Pacific Company was organized to conduct a general railroad business. If it had built its own roads it would have been bound by the provisions of section 490, and its *status* as to the law is not changed by reason of the fact that it preferred to lease rather than build. Let us assume that it has constructed, and is the owner of, certain roads in connection with those it has obtained from the Central Pacific Railroad Company. The result follows that one

distinct and separate body of law governs its conduct as to certain portions of its business, and other portions thereof are controlled by another separate and independent body of law. It needs but a glance at the various provisions of the code to see that such conditions would lead to inextricable confusion. If appellant's position be sound its converse is equally sound, and a transfer by the Southern Pacific Company of its roads (if it has constructed any) to the Central Pacific Company would bring that corporation within the binding effect of section 490, as well as all other provisions of part 4 of the code, *nolens volens.* This practice would not only effect results never contemplated by the legislature, but would effect them in a way absolutely forbidden by sections 287 and 288, for those sections mark the only road that leads to such results. It is not necessary that we enter into a microscopic inspection of the writings evidencing the contracts between these corporations, for the purpose of determining all the properties and rights that actually passed thereby. It is sufficient to say that some things are not the subject of lease. This lessor could not lease the law. The law could not pass under those instruments, however apt words were used to indicate such a purpose. The legislature extended to each of these corporations the right to conduct its business in a certain way. That right, in each instance, was embodied in a separate and distinct set of laws. It was a purely personal right. It was in no sense an asset of the corporation which could be bought and sold. It was nothing that could be transferred. If the Central Pacific Company could transfer it to the defendant it could likewise transfer it to a private individual, and this would be an absurdity. This right which is claimed to have passed to the lessee is a very intangible thing. It certainly is not the privilege which the lessor possessed of bringing itself within the provisions of the code, for the lessee was already within those provisions. Prior to the lease the lessee was subject to the burdens of section 490. How any

transfer of interest from the lessor could operate to re-
lieve the lessee of burdens already resting upon it is not
perceptible.    Appellant terms this act an "exemption."
The only exemption the Central Pacific Company en-
joyed was its exemption from the operation of general
laws pertaining to corporations coming under the pro-
visions of the Civil Code.    It had the right to exist and
do business under certain laws, but this right was not
transferred to the defendant.    It could not be trans-
ferred.    The Central Pacific still exists, and has the
right to do business.    It can build new roads (per-
chance, it did not dispose of all its old ones), and oper-
ate them as it has ever done in the past.    If this right
has been transferred the corporation no longer exists,
for it constitutes its life.    Neither is it possible that this
right could be transferred *pro tanto*, nor that it may vest
in both corporations at the same time.    If section 490
does not apply to defendant, no part of the code per-
taining to corporations applies.    We then have a cor-
poration organized since the adoption of the codes
conducting its business under laws created prior to that
adoption, and such a condition of things is directly
opposed to the provisions of section 288.    It would be
the achievement of astonishing results by the practice
of a legerdemain that has no place in the law, and the
recognition of a doctrine striking at the very root and
source of legislative power.    Appellant, in this respect,
relies firmly upon the case of *Gilmore* v. *City of Utica*,
121 N. Y. 561.    That was a street assessment case, and
the judgment rendered in no way was dependent upon
that portion of the decision here relied upon by appel-
lant.    The decision was not placed upon that ground,
and the matter appears to have been but incidentally
touched upon.    The facts are briefly these: A street
railroad corporation was organized and did business
under a general law which provided that "every such
corporation incorporated under, or constructing, ex-
tending, or operating a railroad constructed or extended
under the provisions of this act," shall pave between its

tracks, and two feet on each side thereof. A second corporation, organized under a law containing no similar provision, leased its roads to the other corporation, and the court said: "But the Utica Belt Line Street Railway Company (lessee) was not operating its road under that act. By a lease authorized by chapter 305 of the Laws of 1885 it had succeeded to all the rights of the Utica Street Railroad Company, and was operating the road in the right of that company, and hence that section has no pertinency." We have not the laws of New York of 1885 before us, and consequently do not know exactly what may be the subject of lease under those statutes. If the language quoted goes to the length of holding that a lessee of a railroad corporation takes with the property leased the right to control and use it subject alone to the law operating upon the lessor corporation we do not indorse it as sound. It would seem in this case that, as the road involved was not one constructed under the provisions of the act under which the lessee was incorporated, by the very terms of the act itself the lessee was not required to do the paving, and possibly the court viewed the question from that standpoint.

4. It is contended that section 490 has no application to this case, because the railroad begins at Oakland pier, within the corporate limits of the city of Oakland. Therefore, the point referred to in the complaint, instead of being an intermediate station, is the initial point, Oakland being the station at which the railroad begins, and there being no railroad between San Francisco and Oakland pier, but a ferry only. It seems very clear that, as to a trip from San Francisco to Alameda via Oakland, Oakland is an intermediate station; and the fact that the defendant has two or more stopping places in Oakland, where, for the accommodation of the public, passengers are allowed to enter and leave its local trains, can make no difference. At whichever of these stopping places a passenger chooses to get off he stops at Oakland; and under the law, as we construe it,

he has the right, if he has made a reasonable demand for the privilege, to afterward resume his journey to Alameda.

5. It is next contended that the line traveled by plaintiff was not the most direct route, and that passen-gers are allowed to take the more circuitous route on condition that they make a continuous passage. It is sufficient for present purposes to say that the ticket purchased by plaintiff in this case was an unlimited ticket, and subject to no such conditions. For the fore-going reasons it is ordered that the judgment and order be affirmed.

De Haven, J., Harrison, J., Fitzgerald, J., and Beatty, C. J., concurred.

Van Fleet, J., concurring.—I concur in the judg-ment. I think that section 489 of the Civil Code is, by clear and necessary implication, repealed by section 22 of article XII of the constitution. But I am not strongly impressed with the position of appellant that section 490 is so dependent upon section 489, to which it refers, as that the repeal of the latter necessarily in-volved and carried with it the repeal of the former. I do not think there is any such dependence manifest from either the subject matter or the provisions of those two sections. To my mind the reference in section 490 to the preceding section is merely in its nature in-cidental, and not such a bond of union as to make the life of the one measure that of the other. The vital question in the case, in my judgment, and the one giv-ing rise to the greatest difficulty, is whether section 490 was ever intended or designed by the legislature to give to the passenger a stopover privilege, or the right to a stopover ticket. Upon this question, after a somewhat extended examination of the case and the arguments presented, I am not prepared to say that the conclusion reached in this opinion of the court is not the correct one.

McFarland, J., dissenting.—I dissent, and, if other duties permit, will hereafter express my views of the case in an opinion.   At present I will merely give my conclusions on two points:

1. I think that the ticket purchased by respondent, on its face, and especially when considered in connection with the reasonable regulations of appellant of its business on the various routes from San Francisco to Oakland, Alameda, and other points near the bay, which regulations were well known to respondent, merely gave to the latter the right to go either to Oakland or Alameda, not to both, and when he elected to get off at Oakland the life of the ticket was ended.

2. A "stopover" ticket is a thing well known not only in railroad circles, but to the general public—so well known as to have gone into the common dictionaries of the language.   It is a ticket which gives one a right "to stop at a station beyond the time of the departure of the train on which one came, with the purpose of continuing one's journey on a subsequent train." (Webster's Dictionary under head "Stop.")   Now, section 490 does not use the phrase "stopover," nor does it, in my judgment, use any equivalent words to denote an intention to give to the holder of an ordinary ticket the right to break up his trip into two or twenty different journeys on different days, and on two or twenty different trains.   I think that the authorities are to the point that a ticket which merely designates in general terms a trip from one point to another means a continuous trip between those points, and such is surely the law where there are by-laws or regulations of the railroad company to that effect, especially where they are known to the purchaser of the ticket.   (See note to *Commonwealth* v. *Power*, 41 Am. Dec. 478, et seq.; 1 Redfield on Railways, 92, et seq., and cases there cited; *Yorton* v. *Milwaukee etc. Ry. Co.*, 54 Wis. 234; 41 Am. Rep. 23; *Cody* v. *Central Pac. R. R. Co.*, 4 Saw. 114; *Gale* v. *Delaware etc. R. R. Co*, 7 Hun, 670.)   This being the general law, there is no language in section 490 sufficient to show an intent

to change it so as to make all tickets stopover tickets. There is no necessity of substituting "or" for "and," where it occurs in the section. The language of the section merely provides for a ticket upon which the holder can ride from the "station where the same is purchased" to the point of destination, and also from any intermediate station to the point of destination, but not that he may stop over at any intermediate station, or at all intermediate stations, and proceed afterward, piecemeal, on other trains, as he may choose. Whether or not the intention was to remedy a certain subsisting evil, as contended for by appellant, there is clearly no intention expressed of providing for stopover tickets.

There are other points in the case, as to some of which I agree with respondent, and as to others with appellant. I think that the judgment should be reversed.

The COURT.—In this case objection was made by respondent, at the oral argument, to the qualification of Mr. Justice Van Fleet to sit in the case, upon the ground that he is related to one of the parties by affinity within the third degree, as provided by section 170 of the Code of Civil Procedure. The fact upon which the objection is based is that the said justice became by marriage, and is thus by affinity, a first cousin, or cousin-german, of one of the stockholders of the corporation appellant. But such relation is not within the third degree. Section 1393 of the Civil Code provides as follows: "In the collateral line the degrees are counted by generations from one of the relations up to the common ancestor, and from the common ancestor to the other relations. In such computation the decedent is excluded, the relative included, and the ancestor counted but once. Thus, brothers are related in the second degree; uncle and nephew in the third degree; cousins-german in the fourth, and so on." As no other rule is elsewhere declared in any of the codes, and as the four codes are to be construed as one statute (Pol. Code, sec.

4480), section 1393 must be taken as establishing the degrees of relationship by consanguinity or affinity, and other sections of the codes referring to such degrees must be construed as passed in view of said section 1393. *People* v. *De La Guerra*, 24 Cal. 73, and one or two previous cases, were decided before the adoption of the codes, and under the rule that statutes in derogation of the common law must be strictly construed. Section 4 of each of the codes provides as follows: " The rule of the common law, that statutes in derogation of the common law are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates." We are satisfied, therefore, that Justice Van Fleet is not disqualified to sit in this case, and the said objection is overruled.

Van Fleet, J., did not participate in the foregoing.